[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Johns*, Slip Opinion No. 2023-Ohio-3679.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3679

IN RE APPLICATION OF JOHNS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Johns*, Slip Opinion No. 2023-Ohio-3679.]

*Attorneys—Character and fitness—Application for admission to the practice of law—Applicant failed to establish present character, fitness, and moral qualifications by clear and convincing evidence—Application disapproved and applicant permitted to reapply for admission at a later date.*

(No. 2023-0337—Submitted June 27, 2023—Decided October 12, 2023.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 841.

_____

**Per Curiam.**

{¶ 1} Applicant, Jeffery Allen Johns, Jr., last known address of Cincinnati, Ohio, is a 2021 graduate of Northern Kentucky University Chase College of Law. Johns applied to register as a candidate for admission to the Ohio bar in 2019.

**{¶ 2}** The Cincinnati Bar Association Admissions Committee reviewed Johns's application and considered his character, fitness, and moral qualifications to practice law. Two members of the committee interviewed Johns in June 2021, and two different members interviewed him again in January 2022. None of the interviewers recommended approval of his application.

**{¶ 3}** The admissions committee notified Johns that the interviewers did not recommend his approval and that he could request an interview with a second investigatory subcommittee. Thereafter, a subcommittee conducted a third interview of Johns. Based on the information provided by Johns at the third interview, the admissions committee recommended that Johns's application be provisionally approved.

**{¶ 4}** In August 2022, the Board of Commissioners on Character and Fitness sua sponte invoked its authority to investigate Johns's character and fitness to practice law. *See* Gov.Bar R. I(12)(B)(2)(e). The board investigated the following matters: (1) Johns's history of criminal convictions, (2) his recent violation of a civil-protection order, (3) concerns about his lack of accountability, (4) allegations from attorney Paul Hervey, and (5) Johns's disregard for the law.

**{¶ 5}** In October 2022, a three-member panel of the board conducted a hearing, during which Johns testified. The panel subsequently issued a report and recommendation finding that Johns had failed to establish by clear and convincing evidence that he presently has the character, fitness, and moral qualifications to practice law in Ohio. The panel, however, recommended that Johns be allowed to reapply for admission in Ohio after January 1, 2024. In March 2023, the board unanimously adopted the panel's report and recommendation.

**{¶ 6}** No objections have been filed. For the following reasons, we adopt the board's recommendations.

## I.  FACTS

{¶ 7} The panel's report outlined Johns's long history of criminal violations, misrepresentations, and lack of accountability as well as his failure to make necessary disclosures on his bar application.  Among the panel's concerns was that some of his most egregious conduct had occurred within the prior three years.  The conduct under review is described below.

### A.  Incident One

{¶ 8} When Johns was in high school, he had an altercation with another student on a school bus.  Johns testified that the other student started harassing him from behind and that Johns therefore "swatted" at him to make him stop.  The student ended up with a bloody nose, and Johns received an in-school suspension.  During the hearing, Johns claimed that he unintentionally hit the student's face and that he had no idea how the student's nose became bloody.  The school bus driver told the school that Johns had hit the student intentionally.

{¶ 9} The panel included this incident to show Johns's history of failing "to take responsibility for his actions and resulting consequences."

### B.  Incident Two

{¶ 10} Also when Johns was in high school, he and a friend broke into a video store and stole drug paraphernalia.  Johns pled guilty to trespassing and had to perform community service.  Johns acknowledged his wrongdoing, but he never took full responsibility for his actions.  Johns testified that his friend had talked him into breaking into the store, and Johns portrayed himself as merely a follower rather than as an active participant in the crime.

### C.  Incident Three

{¶ 11} The next incident occurred in 2007 or 2008 when Johns was working at a ski resort near Akron.  According to Johns, he was authorized to use the resort's equipment as a perk of employment.  One evening Johns borrowed a snowboard from the resort but failed to return it as required.  Johns testified that he had

inadvertently put the borrowed snowboard on a travel rack and had taken it home with him.

{¶ 12} Johns's recollection of the next events was unclear, but either one week or one day later, he took the snowboard back to the resort. But rather than telling his employer that he had kept the snowboard by mistake, he hatched a plan to return the board at the end of the night to make it look like he had checked the board out earlier that day. As part of his plan, Johns put a sticker on the snowboard to make it look like his personal board in order to sneak the board back into the resort. Once inside the resort, Johns rode the snowboard for a few hours until he was escorted to his manager's office and then removed from the property. Johns was charged with theft but was subsequently convicted of the lesser charge of unauthorized use of property.

{¶ 13} Johns testified that in hindsight he should have immediately informed his employer once he realized he had mistakenly kept the snowboard. The panel found, however, that Johns showed little remorse or acknowledgement that he had taken someone's property, and it was troubled by his attempt to hide his mistake rather than take responsibility for his actions.

### D. Incidents Four and Five

{¶ 14} The next two incidents involve traffic violations. In 2011, Johns met with friends at a bar where he had two drinks over several hours. On his way home, Johns became nauseated and was unable to drive further. He pulled his car into a parking lot and attempted to call someone to pick him up. According to Johns, he was sitting in his car with the door open when the police approached. Johns did not believe he was impaired, but he was charged with being in physical control of a motor vehicle while under the influence of alcohol. Johns stated that he was required to pay a fine and attend a two-day class as a result of this charge.

{¶ 15} The second incident occurred in 2014, when Johns was found guilty of reckless operation of a motor vehicle and having an open container of alcohol in

his car. Johns indicated that he was again wrongly accused, but that he lacked the money to hire an attorney to defend against the charges.

{¶ 16} Johns also failed to disclose the open-container violation on his law-school application. When questioned about the omission, he claimed that it was simply an honest oversight.

## E. Incident Six

{¶ 17} Johns joined the military in 2014 but was discharged from service before completing basic training. Johns initially testified that he resigned from the military following a few phone calls from his daughter, who was upset and crying because he was away from her. On his bar application, however, Johns stated that he had been granted a discharge because his military recruiter falsely promised to send him to officer-training school once he completed basic training. When confronted with the discrepancy, Johns explained that the recruiter's lying was a "major reason, but [his] daughter was the bigger reason."

{¶ 18} The panel found Johns's explanations inherently and unnecessarily deceptive. According to the panel, Johns was able to leave the military during basic training for no particular reason yet he developed these different scenarios to justify his departure. As a result, the panel was left without a clear and concise understanding of Johns's military discharge.

## F. Incident Seven

{¶ 19} In 2018, Johns was charged with domestic violence following an altercation with his younger brother. Johns denied striking his brother, but he admitted to having a heated argument with his brother and shoving him in the shoulder. Johns blamed his brother's use of illegal drugs for the incident, claiming that his brother had become confrontational. Because he was about to start law school, Johns decided to resolve the matter by pleading guilty to a reduced charge of disorderly conduct.

**{¶ 20}** Johns also averred that his brother regretted calling the police and tried to get the charges dropped. Johns's brother did write a letter acknowledging their strained relationship and their steps taken to become closer since the incident.

### G. Incident Eight

**{¶ 21}** The next incident occurred in 2020, while Johns was in law school. A former girlfriend of Johns had obtained a temporary civil-protection order against him. Before a full hearing on the matter, Johns was charged with criminally violating the protection order. He was also charged with criminal damaging of property.

**{¶ 22}** The trial court found Johns guilty of both charges and placed him on probation. The court also granted a five-year civil-protection order following the full hearing.

**{¶ 23}** Johns provided the panel with several explanations as to why the civil-protection order and the criminal charge should have been dismissed. Johns filed appeals of both judgments, but both appeals were denied. He also filed a motion for early termination of his probation in 2022, but that motion was denied as well.

**{¶ 24}** Based on the foregoing, the panel found that Johns has never acknowledged any wrongdoing on his part in regard to these incidents and continues to maintain that he was wrongly accused and adjudicated.

### H. Incident Nine

**{¶ 25}** The next issue concerns Johns's failure to disclose in his bar-registration application that he had filed a civil action against the former girlfriend who was granted the protection order. In July 2021, Johns filed a pro se complaint alleging that the former girlfriend had engaged in fraud, defamation, infliction of emotional distress, replevin, negligence, sexual assault, and tortious interference with a business relationship. Johns had several opportunities to disclose this matter during his bar-application process, but he failed to do so in each instance. When

asked by bar counsel to explain his failure to disclose this information, Johns stated that he did not have a good explanation.

### I. Incident Ten

{¶ 26} The final matter concerns a letter that was sent to this court's Office of Bar Admissions that raised several concerns about Johns's honesty and truthfulness. The letter was sent by an attorney who was appointed as the guardian ad litem for Johns's daughter in a custody case. The attorney alleged that Johns had lied to him during the child-custody investigation that he conducted for the court. Among other claims, the attorney averred that Johns did not answer truthfully in response to several questions about his criminal history.

{¶ 27} Johns did not dispute these allegations during the hearing. Instead, he told the panel that he did not believe that he was required to disclose to the guardian ad litem any criminal matters that were expunged or were still pending on appeal. When questioned, Johns conceded that he had also failed to disclose matters that had not been expunged.

{¶ 28} The panel gave some weight to the attorney's letter, understanding that Johns was not under oath or obligated to disclose certain things. Even so, the panel was troubled by Johns's dishonesty and his attempts to justify his actions. Specifically, the panel noted that Johns had taken exception to the attorney's submitting information that was obtained through his role as guardian ad litem without a court order and that Johns had filed a motion for sanctions against the guardian ad litem in the custody case.

### II. BOARD'S FINDINGS AND RECOMMENDATION

{¶ 29} In adopting the panel's report, the board found that Johns had failed to demonstrate that he currently possesses the character and fitness to practice law in Ohio. The report stated that many of the incidents it described are in the distant past and that some, standing alone, are not significant enough to justify barring Johns from the practice of law. However, the board found that in tandem, they

outline a pattern of behavior that has not been corrected over time. The board noted that despite claims of having learned lessons from each incident, Johns had not exhibited signs of personal growth from his experiences. The board found that Johns rarely had taken responsibility for his actions and had not been honest and forthright. And Johns never explained to the board why he had failed to disclose certain information on his bar application.

{¶ 30} In the end, the board found that Johns's pattern of criminal conduct, his failure to take responsibility for his actions, and his misrepresentations simply could not be overlooked. The board noted that Johns's misconduct began over 20 years ago and continued through the bar-application process. Despite his past misdeeds, the board stated that with time Johns may be able to prove that he has the requisite character, fitness, and moral qualifications to practice law in this state. The board noted that Johns had submitted several positive letters of reference and that he is doing well working as a law clerk for a law firm. Accordingly, the board recommended that he be allowed to reapply after January 1, 2024.

### III. DISPOSITION

{¶ 31} An applicant for admission to the Ohio bar bears the burden of proving "by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission." Gov.Bar R. I(13)(D)(1). An applicant may be approved for admission if the applicant satisfies "the essential eligibility requirements for the practice of law" as defined by the board and demonstrates that the applicant's "record of conduct justifies the trust of clients, adversaries, courts, and others." Gov.Bar R. I(13)(D)(3).

{¶ 32} A record that manifests a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute grounds for disapproval. *Id.* The factors to be considered in making a recommendation regarding an applicant's character, fitness, and moral qualifications include whether the applicant has (1) committed or been convicted of a crime, (2) engaged

in a pattern of disregard of the laws of this state, (3) failed to provide complete and accurate information about the applicant's past, (4) made false statements, including omissions, and (5) engaged in acts involving dishonesty, fraud, deceit, or misrepresentations. *See* Gov.Bar R. I(13)(D)(3)(a), (e), (f), (g), and (h).

**{¶ 33}** In determining the weight and significance to give an applicant's prior conduct, we consider several factors, including the recency of the conduct, the seriousness of the conduct, the factors underlying the conduct, whether there is evidence of rehabilitation, whether the applicant has made positive social contributions since the conduct, and the candor of the applicant in the admissions process. *See* Gov.Bar R. I(13)(D)(4)(b), (d), (e), (g), (h), and (i).

**{¶ 34}** Given Johns's pattern of criminal behavior spanning over 20 years and continuing into the bar-application process, his failure to take responsibility for his missteps, his failure to make required disclosures of information on his bar application, and his misrepresentations and lack of honesty during the admission's process, we adopt the board's finding that Johns has failed to demonstrate the current character and fitness to practice law in Ohio.

## IV. CONCLUSION

**{¶ 35}** Accordingly, we disapprove Johns's pending application but permit him to reapply to register as a candidate for admission to practice law in Ohio in January 2024.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

––––––––––––––––––

Jeffery Allen Johns Jr., pro se.

David F. Hine, for the Cincinnati Bar Association.

––––––––––––––––––